## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF VIRGINIA
### Roanoke Division

| | |
|---|---|
| **THREE RIVERS LANDING OF GULFPORT, LP,** a Mississippi limited partnership | ) ) ) |
| **and** | ) ) |
| **APOLLO TAX CREDIT FUND – X3 LIMITED PARTNERSHIP, a Delaware limited partnership,** | ) ) ) |
| Plaintiffs, | ) ) ) |
| **v.** | ) ) |
| **THREE RIVERS LANDING, LLC, a Mississippi** limited liability company, | ) Case No. 7:11-cv-00025 ) ) |
| **HG DEVELOPER, INC., a Virginia corporation,** | ) ) |
| **UNLIMITED CONSTRUCTION, INC., a Virginia** corporation, | ) ) ) |
| **MARK D. KINSER,** | ) ) |
| **and** | ) ) |
| **HORIZON MANAGEMENT INC., a Virginia** corporation, | ) ) ) |
| Defendants. | ) ) |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF
### MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

The Defendants, Three Rivers Landing, LLC ("Former General Partner"),[1] HG

Developer, Inc. ("Developer"), Unlimited Construction, Inc. ("Manager"), Mark D. Kinser

---

[1] For consistency of reference, Defendants adopt the defined proper names used by the plaintiffs in the Complaint.

1

("Kinser"), and Horizon Management, Inc. ("Horizon") (collectively referenced herein at times as "Defendants"), submit this Memorandum of Law in Support of Motion to Dismiss Pursuant to Rule 12(b)(6).

## I.      Introduction and Background on Tax Credit/Tax Loss Properties

This case involves the construction of a 170-unit multifamily, low-income apartment complex in Gulfport, Mississippi, which was planned and built in the aftermath of Hurricane Katrina (the "Apartment Complex"). Because it is structured to rent to low-income individuals and families, the Apartment Complex project qualified for an award of tax credits for its owners/investors. From an investor standpoint, the economics of this Apartment Complex project were and are driven almost entirely by tax credits and tax losses. In these transactions, the developer plans the project and works with a broker such as RBC to obtain investors for the equity portion of the project. Those investors buy the equity interest based upon tax credits which are earned over a 10-year period as well as annual tax losses which allow the investor to offset other income for tax purposes. The greater the qualifying investment in the project, the greater the tax credits and future tax losses (which are associated with depreciation of the capital assets). However, as a condition to the validity of the tax credits, the developer fee on a project such as this (discussed below) must be paid.

From the non-investors' standpoint, this type of project is driven by fees associated with selling the tax credits, building the project, developing the project, and then managing the project. The broker earns a fee based upon the sale of the tax credits; the developer earns a fee for developing the project; the construction contractor, affiliated with the developer, earns profits on the construction or rehabilitation; and, a management company, typically affiliated with the developer, manages the project into the future, collecting management fees. Under the structure

2

of the Apartment Complex project, as typical, the equity investors do not anticipate or want a positive return on equity in the form of positive operating profits during the operation of the project. Accordingly, the general partner, who owns a very small interest in the equity, is allocated a substantial portion of the positive net cash flow from the project after it is operating. (3RIVERS-80).

## I.      Basic Facts

For purposes of this Motion to Dismiss, Defendants rely on the factual allegations of the Complaint and the unambiguous language of the voluminous documents referenced in the Complaint. Because the Plaintiffs reference and rely upon various agreements in their Complaint, those agreements are filed herewith and incorporated by reference:

Exhibit 1 – Second Amended and Restated Agreement of Limited Partnership (cited herein as "LPA") with Exhibits A-P, listed below (bates numbered 3RIVERS-1 through 272).

A   Development Agreement (3RIVERS-106 through 118)
B   Incentive Management Fee Agreement (3RIVERS-119 through 123)
C   Description of Property (3RIVERS-124 through 125)
D   Affiliate Guaranty (3RIVERS-126 through 137)
E   Pledge and Security Agreement (3RIVERS-138 through 149)
F   Summary of Project Loan Terms (3RIVERS-150)
G   Management Agreement (3RIVERS-151 through 162)
H   Projections (3RIVERS-163 through 190)
I    Insurance Requirements (3RIVERS-191 through 194)
J    N/A (3RIVERS-195)
K   General Partner Certificate (3RIVERS-196 through 197)
L   Post Closing Obligations (3RIVERS-198 through 203)
M   Equity Distribution Agreement (3RIVERS-204 through 211)
N   Form Assignment (3RIVERS-212 through 213)
O   Local Law Opinion (3RIVERS-214 through 233)
P   Tax Certification (3RIVERS-234 through 272)

Exhibit 2  --  Capital Contribution General Partner Certificate (1/5/10)

The Exhibits referenced are bates numbered with the prefix, "3RIVERS-" preceding the page number. Specific citations herein will reference the bates numbered page.

3

The plaintiff, Three Rivers Landing of Gulfport, LP, (the "Partnership"), was the limited partnership set up to construct the Apartment Complex and serve as a conduit for the tax credits, tax losses, and net cash flow anticipated by the project. It is the owner of the completed Apartment Complex. Apollo Tax Credit Fund – X3 Limited Partnership is a limited partner in the Partnership, as the successor to Apollo Housing Manager, II, Inc. It owns 99.99% of the equity in the Apartment Complex. (LPA, §5.01(c), 3RIVERS-37). It is responsible for essentially all equity contributions. And it receives almost dollar-for-dollar tax credits for qualifying expenses on the Apartment Project as well as substantial annual tax losses. A good explanation of this can be seen in Exhibit 1P, 3RIVERS-250. Thus, on the projected equity investment of $23,676,213, over 15 years, Apollo was projected to receive cumulative tax benefits in the amount of $30,465,062 in addition to the value of 99.99% of the equity in the Apartment Complex. While the LPA anticipated total capital contributions from Apollo in the amount of $23,676,213 (3RIVERS-37), the LPA also anticipated an upward adjustment in this contribution if additional tax credits were obtained. (3RIVERS-47). Any additional equity contributions under such provision would have additional benefits which would offset the contribution. In this case, there were upward adjustments of qualifying costs and corresponding tax credits in excess of $1 million.[2]

The primary complaint of the both plaintiffs appears to be that the Developer was paid prematurely on funds earned as a Developer's Fee on the project, and there were unanticipated and/or unfunded costs at the time of the closing of the permanent financing which required the limited partner, Apollo Tax Credit Fund – X3, to make a loan in the amount of $1,671,329.19 to

---

[2] While not germane to the present motion, these increases in tax credits were due largely to the increases in construction costs dictated by local authorities and resulting in the change orders of which the plaintiffs now complain.

4

the Partnership. Compl. ¶34. Under the LPA, any such loan from the limited partner accrues interest at Prime plus 2% (3Rivers-46) and is preferred for repayment (3RIVERS-80). It is apparent in the LPA and attached exhibits that the Developer Fee (which causes most of the plaintiffs' complaints) was undoubtedly earned in the amount of $3,789,621, as of the date that the Apartment Project was completed and placed into service. (Ex. 1A, Development Agreement, 3RIVERS-112). Anything unpaid or deferred on the earned Development fee earns interest at the rate of 4.46% per year. Id. at 3RIVERS-113. There is no allegation in the complaint that the Developer's actions in this case somehow void its right to these earned fees.

The Development Agreement and the LPA anticipate that $1,655,861 of the Development Fee would be deferred (3RIVERS-113 and 248), but it was to be repaid with interest, just like a loan. See 3RIVERS-252. Thus, the primary complaint by the plaintiffs is that the plaintiff Partnership was forced to borrow $1,671,329 from the Apollo limited partner at a rate of Prime plus 2% (5.75%) instead of borrowing essentially the same amount from the Developer at an interest rate of 4.46%.

### III. Summary of primary grounds for Motion to Dismiss.

From these basic grievances, the plaintiffs have composed an eleven count complaint which suffers from many defects, not the least of which is its attempt to convert causes of action for breach of contract into torts. (Counts I (conversion), IV (fiduciary duty), VII (fraud), and VIII (negligent misrepresentation)). There is no cause of action in Virginia for "negligent misrepresentation" as asserted in Count VII; a claim for unjust enrichment cannot exist where a valid express contract exists, (Count III); and, elements or required factual predicates for the causes of action asserted in Counts IV (fiduciary duty), V (accounting), VII (fraud), IX (guaranty), and X (indemnity) simply have not been alleged. Many of the counts also attempt to

5

assert claims on behalf of the limited partner, Apollo, who has no standing. Such claims are derivative of the plaintiff Partnership and cannot be asserted by individual limited partners within the Partnership. And many of the counts attempt to assert liability against the Manager, the Developer, and/or Kinser when, in fact, the claims exist, if at all, only against the Former General Partner. Finally, the damages asserted by the plaintiffs are patently improper and provide additional grounds for striking all or part of the demanded relief.

### IV.  Plaintiffs' have not sufficiently pled causes of action as a matter of law

#### A.  Plaintiff's have not pled a claim for conversion (Count I).

Both plaintiffs assert a cause of action for conversion against the Former General Partner, the Manager of that LLC, its CEO, Mark Kinser, and the Developer on the project. There are a number of defects in this claim which cause it to fail to state a cause of action. First, as stated by the plaintiffs in ¶20 of their Complaint, "the relative obligations of the partners to the partnership are set forth in the written partnership agreements among the partners." Thus, claims that funds were paid to the Developer in a manner prohibited by the LPA or Development Agreement constitute breach of contract claims under the respective agreements. Count I is simply an attempt by the plaintiffs to convert claims for breach of the LPA and the Development Agreement (Exhibit 1A) into conversion claims.

In order to recover in tort, "the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." Augusta Mutual Ins. Co. v. Mason, 274 Va. 199, 205, 645 S.E.2d 290, 293 (2007), (quoting Spence v. Norfolk and Western Railway Co., 92 Va. 102, 116, 22 S.E. 815, 818 (1895)). In order to constitute a common law tort, the breach of duty must be "separate and independent from the contract." Id., citing Richmond Metropolitan Authority v. McDevitt Street Bovis, Inc., 256 Va. 553, 557, 507

6

10866/1/3610294v1

S.E.2d 344, 346 (1998).     Here, the LPA and attached documents, including the Development Agreement, establish the duties about which the plaintiffs complain. (Compl. ¶24). They also establish that the Development Fee was earned in full, even if not currently payable in full.   A "timing of payment" complaint based on contract terms is clearly a contract claim. Accordingly, the claims for conversion should be dismissed.

The plaintiffs' conversion claim also improperly asserts a claim on behalf of the Partnership's limited partner, Apollo Tax Credit Fund – X3, Limited Partnership.  This entity is merely a limited partner in the limited partnership which owns the Apartment Complex and which initially and properly received the funds which are then alleged to have been improperly distributed to the Developer.  Under established law, a partner in a limited partnership may not sue individually on a cause of action belonging to the partnership.  McCall v. Telerent Leasing Corp. (*In re BICC Ltd. P'ship*), 392 B.R. 209, 217 (E.D. Va. 2008). Instead, he must bring that suit derivatively in the name of the partnership. Id.  To the extent that Mississippi law applies, the same result is required.  Miss. Code Ann. § 79-14-1001.  Such an action may only be brought under Mississippi law if the partnership has refused to bring the action or such a request is futile. Id.  Limited partners are not proper parties.  Miss. Code Ann § 79-12-29(4).

Under the Virginia Revised Uniform Limited Partnership Act, a limited partner can bring an action for the limited partnership only to the extent that a stockholder could bring an action for a derivative suit under the Stock Corporation Act. Va. Code § 50-73.62. Under the Stock Corporation Act, a stockholder cannot bring a derivative action until he has made a written demand that the corporation take the action requested in the suit. Va. Code § 13.1-672.1(B)(1); *see also* Allen C. Goolsby, *Goolsby on Virginia Corporations* 90 (2d ed. 2005). The shareholder then generally must wait 90 days after the demand to bring an action. Va. Code § 13.1-

7

672.1(B)(3). Because of their nature, shareholder derivative actions are subject to summary dismissal when the action sought is not in the best interest of the corporation. Va. Code § 13.1-672.4. Here, the Partnership is already a plaintiff and can assert claims on its own account; and such a claim is for breach of contract rather than one for conversion.

Third, the Complaint alleges that the offending funds were improperly paid to the Developer in violation of the terms of the Development Agreement (Complaint ¶24). There is simply no allegation in the Complaint that the funds were paid improperly to the Former General Partner, the Manager, or Mark Kinser. Thus, no claim of conversion has been properly pled as to these defendants.

Finally, it is clear from the Development Agreement that the Developer was to be paid a Development Fee in the amount of $3,789,621, which amount "shall be deemed to have been earned" in total upon the placement in service of 100% of the apartment units in the project (Ex. 1A, Development Agt. §5, 3RIVERS-112). Thus, while the plaintiff Partnership (the owner of the Apartment Complex), may complain that a portion of the Development Fee has been paid in advance of when it was anticipated under the Development Agreement, it cannot claim that the funds paid as Development Fees were unearned. In fact, while $1,655,861 of the Development Fee was to be deferred and paid over time, the Development Agreement provides that it is to earn interest at a rate of 4.46% per annum. By comparison, plaintiffs complain that a loan from the limited partner, Apollo, was required in a similar amount (at an interest rate of 5.75%). These allegations may give rise to a breach of contract damages claim that would be calculated in the amount of the net difference between these two scenarios, but they do not give rise to a cause of action for conversion.

B.     <u>The Plaintiffs have not properly pled a claim for breach of contract.</u>

8

The plaintiffs allege that the Former General Partner breached the LPA by prepaying Development Fees to the Developer. Their claim for damages apparently asserts this entire amount as damages for this breach. However, as noted in the preceding section, the Development Fees are earned by the Developer and owed by the plaintiff Partnership. The only question is whether they were paid in whole or in part ahead of schedule. If they had remained unpaid, they would have earned interest in the amount of $4.46% per annum. Accordingly, the plaintiffs may not assert a claim for damages in the amount of these payments because they have simply not lost this amount – and such is apparent from the Complaint and referenced documents. At most, the claim would be for the economic value lost to the plaintiff partnership as a result of having to prepay the Development Fee, taking into account the interest saved thereon or the interest differential compared with the limited partner loan. While there may be a damage calculation associated with such a calculation, as a matter of law it cannot be the full amount of the Development Fee prepaid to the Developer; and, such a claim should be dismissed.

Count II also asserts a claim for breach of the LPA arising from the Former General Partner failing to bring sufficient cash to the final closing in order to pay all amounts in excess of the limited partner's equity contribution and permanent financing (again, requiring the loan from the limited partner, Apollo). It is unclear how the plaintiff partnership calculates the remaining portion of its damages to achieve the alleged total of $2,452,111. However, to the extent that it includes loans from the limited partner or the principal payment of Development Fees to the Developer, it is not a proper assertion of damages. Likewise, to the extent that if fails to take into account the earned Development Fee, it is also improper and fails to state a claim. There may be other defects which are subject to a motion to dismiss relating to the alleged damages in

9

the breach of contract count, but the allegations of damages are too ambiguous at this point to allow such a motion.

C.      Count III fails to state a claim for unjust enrichment.

Unjust enrichment is based on an implied contract to pay the reasonable value of services rendered. Hendrickson v. Meredith, 161 Va. 193, 198, 170 S.E. 602, 604 (1933). See also Marine Development Corp. v. Rodak, 225 Va. 137, 140-41, 300 S.E.2d 763, 765 (1983). For a court to award a quantum meruit recovery, it must conclude that there is no enforceable express contract between the parties covering the same subject matter. In such a case, the court will imply a contract between the parties to prevent inequity; but, when such an express contract exists, however, there is no need to imply one because the parties have already negotiated an agreement. Nedrich v. Jones, 245 Va. 465, 477, 429 S.E.2d 201, 207 (1993). Quite simply, unjust enrichment or quantum meruit cannot be asserted when a claim exists under an express contract. Here, the plaintiff Partnership alleges an express contract with the Developer which it claims was breached by the prepayment of deferred development fees. It also alleges a breach of the LPA. It cannot imply a contract, the subject matter of which is governed by other express contracts.

D.      Count IV fails to state a claim for breach of fiduciary duty.

In Count IV, both plaintiffs allege breach of fiduciary duty by the Former General Partner, the Manager (as managing member of the Former General Partner), and Kinser (CEO of the Manager) for breach of fiduciary duties. As with Count I, the plaintiffs' claim for breach of fiduciary duty arises entirely out of contractual obligations and cannot be sustained. See, Augusta Mutual Ins. Co., 274 Va. at 207-8, 645 S.E.2d at 294-5. In Augusta, the Court held that the plaintiff's claim for breach of fiduciary duty should be dismissed and brought simply as a breach of contract claim because the fiduciary duties of the agent defendant arose from an

10

agency which was grounded in the written agency agreement. Quoting <u>Oleyar v. Kerr</u>, 217 Va. 88, 90, 225 S.E.2d 398, 399 (1976), the Court stated:

> If the cause of complaint be for an act or omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists) then the action is founded upon contract, and not upon tort.

<u>Id</u>. Even though the Court acknowledged that agents owe fiduciary duties to principals, it nonetheless held that the tort claim should be dismissed. The same is true here even though, as a general proposition, the Defendants agree that general partners owe duties to a limited partnership which are, at times, fiduciary in nature. The entire claim must be dismissed.

The plaintiffs have completely failed to allege facts or relationships which would support a claim that a fiduciary duty exists between the Manager and/or Kinser and the plaintiff Partnership, much less between them and the limited partner within that Partnership. The claim must be dismissed as to the Manager and Kinser.

As noted above, a limited partner does not have the right to assert claims on its own behalf which are for actions injurious to the limited partnership. Accordingly, the limited partner, Apollo, has no standing to assert the claims asserted in Count IV. To the extent that the Count IV allegations may be asserted at all, they may only be asserted by the Partnership plaintiff against the Former General Partner. Count IV also suffers from the same defects of damages allegations noted in sections A and B above.

   E.   <u>Plaintiffs have not pled facts sufficient to support a claim for accounting (Count V).</u>

In Count V, both plaintiffs assert a claim for accounting. However, the Complaint pleads no facts to allege that the Former General Partner failed to keep proper books indicating the sources and uses of funds within the plaintiff Partnership. There is also no allegation that a

11

demand for such records has been made and refused. Accordingly, this count should be dismissed. Count V also improperly asserts the "accounting" claim against the Manager and Kinser, neither of whom were partners in the Partnership. The Complaint fails to allege facts which would give rise to a duty of an accounting on behalf of these individuals to either of the plaintiffs.

      F.    <u>Plaintiffs fail to plead a claim for fraud (Count VII).</u>

In Count VII, the limited partner plaintiff, Apollo Tax Credit Fund – X3, asserts a claim for fraud against the Former General Partner, the Manager, and Kinser. The elements of fraud require that the plaintiff allege a material false statement by the defendant, known by the defendant to be false, made intentionally with the purpose that the statement would mislead the plaintiff, subsequently relied upon by the plaintiff to its detriment. <u>Spence v. Griffin</u>, 236 Va. 21, 28, 372 S.E.2d 595, 598 (1988). There are numerous defects in this claim which cause it to fail to state a cause of action. The complaint fails to allege that the offending "misrepresentations" were known to be false by any of the defendants. The "misrepresentations" alleged by the plaintiff relate solely to a certification provided by the Former General Partner. (Ex. 2, 3RIVERS-433). However, the claim in Count VII is asserted not only against the Former General Partner, but also the Manager and Kinser. There are no claims asserted to pierce the veil of the entities at issue; and plaintiffs' claims against these parties must fail.

Count VII also suffers from the same defect as Count I in that it attempts to create a tort from a breach of contract. It falls squarely within the holding of <u>Richmond Metropolitan Authority v. McDevitt Street Bovis, Inc.</u>, 256 Va. 553, 507 S.E.2d 344, 346 (1998). In that case, the municipal authority hired a private contractor to build a baseball stadium. The contractor submitted sworn payment applications and other contract documents stating that it had

12

completed the work according to design specifications. Id. at 555, 507 S.E.2d at 345. The authority later found that, not withstanding its representations, the contractor had not complied with the specifications. Id. at 556, 507 S.E.2d at 345. The authority sued the contractor for breach of contract and fraud. However, the trial court dismissed the contract claim as time-barred and entered summary judgment for the contractor on the fraud claims. Id. It found that the contractor's alleged misrepresentations had breached only duties assumed by contract. Id. at 557, 507 S.E.2d at 346. The Virginia Supreme Court affirmed the trial court's action because each of the contractor's misrepresentations related to a duty specifically required by the contract; and therefore, the misrepresentations could not support a fraud claim. Id. at 559, 507 S.E.2d at 347. The same is obviously true here. In fact, the offending "certificate" is specified in the LPA. (3RIVERS-196). Applying clear Virginia law to the present facts, Apollo's claim for fraud must be dismissed.

This count also suffers from the same defects of damages allegations noted in sections A and B above.

G.      There is no claim for negligent misrepresentation under Virginia law (Count VIII).

Virginia law simply does not recognize a claim for negligent misrepresentation. Haigh v. Matsushita Electric Corp. of America, et al., 676 F.Supp. 1332, 1349-50 (E.D.Va 1988). However, Virginia does recognize constructive fraud, the essence of which is negligent misrepresentation. Richmond Metro., 256 Va. at 559, 507 S.E.2d at 347. However, even if the plaintiffs correct this error or even if the court elects to overlook it, Count VIII suffers from the same defect as Count VII, attempting to create a tort out of a breach of contractual duties. It also suffers from the same defects of asserting claims not only against the Former General Partner,

13

but against the Manager, its managing member, and Kinser, its CEO. This count also suffers from the same defects of damages allegations noted in sections A and B above.

H.    Plaintiffs fail to state a claim for breach of the Affiliate Guaranty (Count IX).

The plaintiffs allege that the Former General Partner, the Manager, the Developer, and Mark Kinser have breached the Affiliate Guaranty by failing and refusing to pay obligations required under that guaranty. However, the terms of that guaranty require that the guarantors pay only "upon receipt of written demand therefore from Apollo." (Affiliate Guarantee ¶3, 3RIVERS-128). Written demand is a prescribed condition to any obligation under the guaranty. The plaintiffs have not alleged demand for payment, nor can they since it has not occurred. The allegations of Count IX also fail to the extent that they assert damages in an amount that has clearly not been incurred by the plaintiff limited partner, Apollo Tax Credit Fund – X3.[3] The allegations as to Apollo relate to a loan made to the plaintiff Partnership in the amount of $1,671,329.19. (Compl. ¶34). There is a similar reference to an inchoate allegation that the limited partner will be obligated to fund an operating reserve in the future. Id. However, there is absolutely no allegation that the limited partner has paid the alleged operating reserve amounts nor is there any allegation that the Partnership will not repay the loan to the limited partner with interest as required under the LPA. Similarly, there is no allegation that the Development Fees are not earned by the Developer such that they too would constitute obligations of the Partnership.

I.    The Plaintiffs fails to state a claim for indemnity under Count X.

---

[3] This count also suffers from the same defects of damages allegations noted in sections A and B above.

14

In Count X, the plaintiff limited partner, Apollo Tax Credit Fund – X3, asserts a claim for indemnity under Section 8.09 of the LPA. It does so with reference to an allegation that one of the subcontractors on the job, Bearden, is suing in Mississippi for non-payment on the project in the amount of $324,661.42. However, there is no allegation that such amount has been paid, that it is reasonable and should be paid, that there is any likelihood that the limited partner is likely to be held responsible for all or any part of the claim, or that the plaintiff is legally obligated to pay the claim. There is, likewise, no allegation that the plaintiff has requested that the Former General Partner defend its interests in the lawsuit.

The proper course of action under the facts alleged would be to bring a third party claim against the indemnitors in the Mississippi action. However, in any breach of contract claim, an assertion of damages merely for an asserted claim, regardless of how spurious the claim may be, is simply speculative and cannot form the basis for a recovery. SunTrust Bank v. Farrar, 277 Va. 546, 554, 675 S.E.2d 187, 191 (2009). Damages based on uncertainties, contingencies, or speculation cannot be recovered. Shepherd v. David, 265 Va. 108, 125, 574 S.E.2d 514, 524 (2003). Here, the conjecture in the plaintiff's claim is clear. For example, the plaintiff claims $324,661.42 today, but could be dismissed from the lawsuit tomorrow without any liability. Indeed, it appears that the limited partner should be dismissed since it would be improper to pierce the veil of the Partnership and claim against its limited partners. In any event, there can be no claim under this count until the debt to be indemnified has been paid or, at the very least, rendered finite. Accordingly, the cause of action asserted in Count X is not ripe and must be dismissed.

10866/1/3610294v1

WHEREFORE, the defendants ask that the Complaint should be dismissed as filed and that they should not bear the expense of further answer until the Court rules on the Defendants' Motion to Dismiss.

Respectfully submitted this 9th day of March, 2011.

/s/ J. Scott Sexton

J. Scott Sexton (VSB No. 29284)
Maxwell H. Wiegard (VSB No. 68787)
GENTRY LOCKE RAKES & MOORE LLP
800 SunTrust Plaza
P.O. Box 40013
Roanoke, Virginia 24022-0013
(540) 983-9300
Fax: (540) 983-9400
Scott_Sexton@gentrylocke.com
Max_Wiegard@gentrylocke.com

*Counsel for Defendants*

16

10866/1/3610294v1

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of March, 2011, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Tyler P. Brown, Esquire (VSB No. 28072)
Justin F. Paget (VSB No. 77949)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
(804) 788-8200
tpbrown@hunton.com
jpaget@hunton.com

Counsel for Plaintiffs

/s/ J. Scott Sexton

17