CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 04 2012

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| THREE RIVERS LANDING OF GULFPORT, LP, | ) ) ) |
| and | ) ) |
| APOLLO TAX CREDIT FUND – X3 LIMITED PARTNERSHIP | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| THREE RIVERS LANDING, LLC, | ) ) |
| HG DEVELOPER, INC., | ) ) |
| UNLIMITED CONSTRUCTION, INC., | ) ) |
| MARK D. KINSER, | ) ) |
| and | ) ) |
| HORIZON MANAGEMENT INC., | ) ) |
| Defendants. | ) ) |

Case No. 7:11-cv-00025

**MEMORANDUM OPINION**

By: Hon. James C. Turk
Senior United States District Judge

This matter is presently before the Court on the Defendants' Motion to Dismiss. (Dkt. No. 16). The Plaintiffs filed a memorandum in opposition to Defendants' Motion to Dismiss (Dkt. No. 18) and the Defendants replied (Dkt. No. 20). The Court heard oral argument on the motion on May 23, 2011. The parties then requested an order referring the case to mediation, but the parties were unable to reach a settlement. At an April 17, 2012 status conference the parties requested the Court rule on the pending motion to dismiss. For the following reasons, the Defendants' Motion to Dismiss is **DENIED**.

## I. Background

This case arises out of the construction of a 170-unit low-income apartment complex in Gulfport, Mississippi and the alleged misuse of approximately $2 million by Defendant Three Rivers Landing, LLC ("the Former General Partner"). Two contracts, the Partnership Agreement and the Development Agreement, contain provisions regarding the payment of the $2 million at issue here. The Defendants in this case are Three Rivers Landing, LLC; HG Developer, Inc. ("the Developer"); Unlimited Construction, Inc. ("the Manager"); Horizon Management, Inc. ("the Management Company"); and Mark D. Kinser ("Kinser"). Kinser owned the Former General Partner, which he controlled through the Manager. Kinser also owned the Developer and the Management Company. The Plaintiffs are Three Rivers Landing of Gulfport, LP ("the Partnership") and Apollo Tax Credit Fund-X3 Limited Partnership ("the Limited Partner"). RBC Three Rivers, LLC is the Current General Partner of the Partnership and has brought the instant suit on behalf of the Partnership.

The purpose of the apartment complex was to provide low-income housing and as such it qualified for an award of tax credits, called Low Income Housing Tax Credits ("LIHTCs"). The calculation of LIHTCs is based on the calculation of the "eligible basis." See I.R.C. § 42(d)(1). The eligible basis is determined by the "adjusted basis as of the close of the 1st taxable year of the credit period" and includes most reasonable construction costs, such as development fees, provided such fees are included in the adjusted basis of the first taxable year.[1] Id. Development fees are fees earned by the developer, here HG Developer, Inc., as compensation for bringing the apartment complex to completion.

---

[1] The first taxable year is the year in which the building's first unit is certified for occupancy under applicable state or local law. Id.; I.R.S. Notice 88-116, 1988-2 C.B. 449.

2

In this case the total development fee was $3,789,621 earned as of the date the apartment complex was placed into service, with $1,655,861 deferred and to be paid with interest. The Plaintiffs allege that the Former General Partner paid the entire development fee to the Developer, rather than allowing the $1,655,861 to be paid as a deferred payment, as specified under the Development Agreement. As a result of the entire development fee being paid before it was due, the Partnership lacked the necessary funds to close on permanent financing for the apartment complex. To facilitate closing on permanent financing the Limited Partner loaned the Partnership $1,671,329.19. The Partnership also lacked the funds to pay off the construction loan. The Limited Partner contributed the Sixth and Seventh Installments of equity to the Partnership, as contemplated under the Partnership Agreement, and some of this money was used to pay off the construction loan, which the Plaintiffs allege was not contemplated under the Partnership Agreement.

The Plaintiffs have filed an eleven count complaint alleging (I) conversion, (II) breach of contract, (III) unjust enrichment, (IV) breach of fiduciary duty, (V) accounting, (VI) breach of the construction contract, (VII) fraud, (VIII) negligent misrepresentation, (IX) breach of the affiliate guaranty, (X) indemnity, and (XI) breach of the property management contract. The Defendants have moved to dismiss all counts except for Counts VI and XI. For the reasons articulated below the Defendants' Motion to Dismiss is **DENIED**.

**II. Standard of Review**

Under Federal Rule of Civil Procedure 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." When evaluating a complaint under Federal Rule of Civil Procedure 12(b)(6), courts must "accept the allegations in the complaint as true, and draw all reasonable factual inferences in favor of the plaintiff."

Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Notwithstanding Rule 8(a)(2), the Supreme Court has specified that pleadings which merely offer "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" are not sufficient. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007)). Thus, while "detailed factual allegations" are not required, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id.

### III. Analysis

#### A. Piercing the Corporate Veil

In Counts I, IV, VII, and VIII the Plaintiffs seek to pierce the corporate veil by bringing claims against the Manager and Kinser, in addition to the Former General Partner. The Defendants argue that the Plaintiffs may not simply disregard the corporate distinctions between the Former General Partner, the Manager, and Kinser. A party seeking to pierce the corporate veil "must show that the shareholder sought to be held personally liable has controlled or used the corporation to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage." O'Hazza v. Exec. Credit Corp., 431 S.E.2d 318, 320 (Va. 1993) (citing Lewis Trucking Corp. v. Commonwealth, 147 S.E.2d 747, 753 (1966)). Here the Plaintiff has adequately pled that Kinser, who is the CEO and principal owner of the Former General Partner, the Manager, and the Developer, sought to perpetrate a fraud when he paid the development fee to the Developer before it was earned and the Developer subsequently used the development fee to fund another Kinser project. (Compl. ¶¶ 7, 24, 25). Thus, the Plaintiffs have satisfied, for the purposes of a motion to dismiss, the requirement that the corporation be used to perpetrate a fraud or crime or commit an injustice before piercing the corporate veil.

### B. Counts I, IV, VII, VIII

Defendants' motion to dismiss challenges four counts—Count I: Conversion, Count IV Breach of Fiduciary Duty, Count VII: Fraud, and Count VIII: Negligent Misrepresentation—on the basis that the purported causes of action sound only in contract and not in tort. This Court disagrees. The Virginia Supreme Court has acknowledged "that a single act or occurrence can, in certain circumstances, support causes of action both for breach of contract and for breach of a duty arising in tort." Augusta Mutual Ins. Co. v. Mason, 645 S.E.2d 290, 293 (Va. 2007). These circumstances are met when "the duty tortiously or negligently breached [is] a common law duty, not one existing between the parties solely by virtue of the contract. Foreign Mission Bd. v. Wade, 409 S.E.2d 144, 148 (Va. 1991) (citing Spence v. Norfolk & W. R.R. Co., 22 S.E. 815, 818 (Va. 1895)). To determine whether the duty is a common law duty or a duty that exists solely by virtue of the contract the court examines "the source of the duty violated." Richmond Metro. Auth. v. McDevitt Street Bovis, Inc., 507 S.E.2d 344, 347 (Va. 1998).

With regard to Count I, a general partner has a common law duty not to appropriate funds from the partnership. See Va. Code Ann. § 50-73.102(B)(1) ("A partner's duty of loyalty to the partnership and the other partners" includes the duty "[t]o account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner of partnership property, including the appropriation of a partnership opportunity...."). This duty exists separately and independently from any obligations regarding the payment of the development fee established under the Partnership Agreement or Development Agreement. See PGI, Inc. v. Rathe Prods., Inc., 576 S.E.2d 438, 443 (Va. 2003) ("A cause of action for conversion lies independent of an action in contract and may provide a separate basis, distinct from the contract, upon which one

partner may sue another."); Rogel v. Hughes and Smith, Inc., No. 131757, 1994 WL 1031484, at *2-4 (Va. Cir. Ct. Dec. 30, 1994) (affirming trial court's decision to allow allegations of breach of fiduciary duty, fraud, conversion and breach of contract to go to the jury). The Plaintiffs have properly pled a cause of action for conversion because the Plaintiffs have alleged that the Former General Partner, acting on behalf of the Partnership, paid Partnership funds to the Developer before they were due and that the Developer then passed those funds onto another entity owned by Kinser. (Compl. ¶¶ 4-7).[2] See Universal C.I.T. Credit Corp. v. Kaplan, 92 S.E.2d 359, 365 (1956)) (stating the elements of conversion are: "(i) the ownership or right to possession of the property at the time of the conversion and (ii) the wrongful exercise of dominion or control by defendant over the plaintiff's property, thus depriving plaintiff of possession").

With regard to Count IV, the Plaintiffs allege that when the Former General Partner paid the development fee to the Developer before it was due, the Former General Partner breached his fiduciary duties to the Partnership. Fiduciary duties owed by one partner to other partners are common law duties and thus independent from duties that may be imposed under the Partnership Agreement. See Va. Code Ann. § 50-73.102(B). The present case is distinguishable from Augusta Mutual. In Augusta Mutual the defendant failed to obtain accurate information regarding the condition of the home being insured thereby expressly violating the contract between the parties that "specifically required 'due diligence in obtaining accurate information and making all necessary inspections required.'" 645 S.E.2d at 294. Whereas, in the present case, the Partnership Agreement contained no express provision that forbid the Former General Partner from paying the development fee early. Thus, unlike Augusta Mutual the Former

---

[2] The Plaintiffs allege that the Former General Partner acted through the Manager who was under the control of Kinser.

General Partner did not violate an express contractual provision and the Plaintiffs' claim sounds in tort.

With regard to Counts VII and VIII, the Plaintiffs allege that the Former General Partner, the Manager, and Kinser committed fraud through misrepresentations contained in the General Partner Certificate that induced the Limited Partner to make the Fifth Capital Contribution. (Compl. ¶¶ 31, 64, 65). The Plaintiffs further alleged that the Limited Partner relied on these representations and suffered damages in the form of the loan that the Limited Partner made to the Partnership that was not contemplated under the Partnership Agreement. (Compl. ¶¶ 31, 34). These allegations are sufficient to state a cause of action for fraud and negligent misrepresentation.

The present case is distinguishable on its facts from McDevitt. In McDevitt, the contractor submitted payment request forms that contained a sworn statement certifying the construction had been completed in accordance with the applicable contract. 507 S.E.2d at 345. Subsequently, it was discovered that the contractor had not complied with the contract specifications. Id. On those facts, the Virginia Supreme Court ruled that that the cause of action sounded only in contract and not in tort because the duties breached existed solely in the contract and not at common law. Id. at 347. In the present case, however, the Former General Partner was a fiduciary to the Partnership. Thus the duties between the Former General Partner and the Partnership do not arise solely from the contract, as they did in the case of the contractor in McDevitt. The Former General Partner breached his common law duties to the Partnership when he made misrepresentations in the General Partnership Certificate. Thus the action for fraud and negligent misrepresentation are properly pled.[3]

---

[3] Although the Virginia Supreme Court has been careful to "safeguard against turning every breach of contract into an actionable claim for fraud," McDevitt, 507 S.E.2d at 348, that cautiousness should not be interpreted as the court

## C. Count II: Breach of Contract

The Defendants' Motion to Dismiss specifically disputes the Plaintiffs damage calculation and the proper method to calculate the applicable damages. (Dkt. No. 17, at 9). To state a claim for breach of contract, Plaintiffs must assert (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation of that obligation; and (3) injury or damage to the plaintiff caused by the breach of that obligation. Filak v. George, 594 S.E.2d 610, 614 (Va. 2004). Plaintiffs have properly pled the existence of the Partnership Agreement and the Development Agreement, that the Defendants violated the agreement by paying out the development fee before it was owed, and that the Plaintiffs were damaged in the form of the loan they were compelled to make to the Partnership. Plaintiffs assert damages in the amount of $2,452,111. As the Plaintiffs correctly note, a motion to dismiss is not the proper vehicle to dispute Plaintiffs' alleged damages. At the motion to dismiss stage, the Plaintiffs are only required to state a plausible basis for relief, after the Court accepts the Plaintiffs' allegations as true, Iqbal, 129 S. Ct. at 1949-51, which the Plaintiffs have done.

## D. Count III: Unjust Enrichment

To state a claim for unjust enrichment, the Plaintiffs must allege (1) that they conferred a benefit on the Defendants; (2) the Defendants knew of the benefit and should reasonably have expected to repay the Plaintiffs; and (3) the Defendants accepted or retained the benefit without paying for its value. Schmidt v. Household Fin. Corp., II, 661 S.E.2d 834, 838 (Va. 2008). Here, the Plaintiffs by alleging the Former General Partner paid the development fee early, the existence of contract terms that governed the timing of the payment of the development fee, and

---

overruling common law precedent that a partner in a fiduciary relationship must not act against the interests of his principle, even if the relationship is formed by contract.

that the Developer kept, and in fact transferred the development fee to another Kinser controlled entity, have sufficiently pled unjust enrichment against the Developer.

The Court finds the Defendants argument to the contrary unconvincing at the motion to dismiss stage. The Defendants assert that no claim for unjust enrichment lies because unjust enrichment is a quantum meruit recovery that exists only if there is no enforceable express contract between the parties. In cases where an express contract exists, there is no need to imply a contract and allow quantum merit recovery. See Nedrich v. Jones, 429 S.E.2d 201, 207 (Va. 1993). In the present case, however, there is no express contractual provision between the parties that covers the alleged wrongful conduct. The Developer is not party to the Partnership Agreement and the Development Agreement, between the Former General Partner and the Developer, details the responsibilities of the Developer and states when the development fee is payable, but does not contain any provisions regarding damages against the Developer if the development fee is paid before it is due. Without an express contract covering the complained of conduct, Plaintiffs' cause of action for unjust enrichment may go forward.

### E. Count V: Accounting

Defendant argues that the Plaintiffs have failed to state a claim for accounting because the Complaint does not allege the Former General Partner failed to keep proper books and furthermore because there is no allegation that a demand for such records has been made and refused. (Dkt. No. 17, at 11-12). However, to plead a claim for accounting the Plaintiffs need not plead a refused demand for records. A claim for accounting is "a form of equitable relief which is available upon order of a court in equity 'providing for an accounting of funds among those with a partnership or other fiduciary relation inter se.'" McClung v. Smith, 870 F. Supp. 1384, 1400 (E.D. Va. 1994) (quoting Leigh B. Middleditch, Jr. and Kent Sinclair, Virginia Civil

Procedure, § 3.4(I) (2nd ed. 1992)). Therefore, by alleging the Defendants, who stood in a fiduciary relationship to the Partnership, wrongfully converted partnership funds, the Plaintiffs have pled sufficient facts to withstand the Defendants' motion to dismiss.

### F. Count IX: Breach of Affiliate Guaranty

The Plaintiffs allege the Former General Partner breached the Affiliate Guaranty when he failed to pay the Excess Development Costs. The Defendants argue, however, that the Plaintiffs cannot state a claim for breach because the terms of the Affiliate Guaranty require a written demand for payment that was not made in this case. (Dkt. No. 17, at 14). The Plaintiffs respond that under Section 8(e) of the Affiliate Guaranty, the Guarantors – here the Defendants – expressly waived any right to assert lack of demand as a defense. (Dkt. No. 18, at 22). To state a claim for breach of the Affiliate Guaranty requires the same elements as are required to state any breach of contract claim. Thus, by alleging the existence of the Affiliate Guaranty, the Defendants failure to pay under a provision of the Affiliate Guaranty, and the monetary damages sustained as a result, in the form of the lost Excess Development Costs that were payable by the Former General Partner, the Plaintiffs have sufficiently pled a claim for breach of the Affiliate Guaranty. The fact that the parties dispute whether a written demand is required as a precondition for payment under the Affiliate Guaranty is not controlling here because at the motion to dismiss phase the Court must accept the Plaintiffs' well-pled allegations as true and the Plaintiffs have alleged that lack of demand as a defense was waived.

### G. Count X: Indemnity

The Plaintiffs have brought an indemnity claim against the Former General Partner under Section 8.09 of the Partnership Agreement. The Complaint states that "[a]s a result of the act, omission, malfeasance or nonfeasance of the Former General Partner, the Limited Partner has

incurred and will continue to incur monies, including but not limited to the payment of costs and attorneys' fees, in dealing with claims asserted by Bearden and others of not less than $354,040." (Compl. ¶ 84). Defendant argues that this count cannot survive a motion to dismiss because the damages are too speculative. However, as previously noted, at the motion to dismiss stage the Court accepts the Plaintiffs' allegations as true and thus the motion to dismiss stage is not the appropriate phase of litigation to challenge Plaintiffs' damages calculation.

Furthermore, the Plaintiffs indemnity claim is, in essence, a particularized breach of contract claim and thus the elements are the same as those for any breach of contract claim. Again, as detailed above, the Plaintiffs have pled the existence of a valid, enforceable contract, a specific breach of that contract, in the form of failure to indemnify the Defendants under the indemnity provisions of the Partnership Agreement, and the damages resulting from that breach. Thus, the Plaintiffs have sufficiently pled the indemnity claim.

## IV. Conclusion

It is clear that the Plaintiffs have sufficiently pled their claims against the Defendants to be allowed to proceed. Accordingly, the Defendants' Motion to Dismiss is **DENIED**. An appropriate order shall issue this day.

ENTER: This _____ day of May, 2012

_____
Senior United States District Judge