CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 0 2 2013

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| THREE RIVERS LANDING OF GULFPORT, LP, and APOLLO TAX CREDIT FUND–X3 LIMITED PARTNERSHIP<br><br>Plaintiffs,<br><br>v.<br><br>THREE RIVERS LANDING, LLC, HG DEVELOPER, INC., UNLIMITED CONSTRUCTION, INC., MARK D. KINSER, and HORIZON MANAGEMENT INC.,<br><br>Defendants. | Case No. 7:11-cv-00025<br><br><br><br>**MEMORANDUM OPINION**<br><br><br><br>By: Hon. James C. Turk<br>Senior United States District Judge |

Pending before the Court is Plaintiffs' Motion for Summary Judgment, ECF No. 66, which seeks summary judgment as to Counts I, II, IX, and X of Plaintiffs' Complaint. Defendants filed a brief in opposition, ECF No. 75, Plaintiffs filed a reply, ECF No. 79, and the Court heard oral argument on the motion on September 26, 2013, making the motion ripe for disposition. For the reasons set forth below, the Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** as to liability and **DENIED** as to the amount of damages sought.

I.  FACTUAL BACKGROUND

A.  General Background

This case is essentially a commercial dispute between a Partnership and several of its partners or former partners, in which the Plaintiffs bring various claims for breach of contract, accounting, indemnity, and torts such as conversion, fraud, and negligent misrepresentation. See

ECF No. 1, Complaint. Plaintiff Three Rivers Landing of Gulfport, L.P. ("the Partnership") was formed to develop, construct, own, maintain, and operate a 170-unit apartment complex located in Gulfport, Mississippi. Answer ¶ 15. Because a portion of the apartments were set aside for rental to low-income individuals and families, the Apartment Complex qualified for certain federal tax credits. Id.

In the Counts for which summary judgment is sought, Plaintiffs allege that Defendant Mark D. Kinser, and the other Defendants, all of which are entities owned or controlled by Kinser, "unlawfully authorized the withdrawal of at least $2.7 million from Plaintiff Three Rivers Landing of Gulfport, L.P. (the "Partnership")." ECF No. 67 at 2. "Instead of using those funds to curtail the Partnership's construction loans, as the partnership documents and construction loan agreement required, Kinser diverted the funds to pay costs incurred for his other, unrelated development projects. . . ." Id. "As a result, the Partnership lacked funds necessary to pay off its construction loan, which threatened the ability of the Partnership to close its permanent financing absent the return of the converted funds or the receipt of funds from other sources." Id.

Plaintiff Apollo Tax Credit Fund-X3 Limited Partnership learned of the withdrawal and demanded that Kinser and/or his companies return the funds, but Defendants did not return the funds and thus there was a shortfall that could have prevented a closing on the permanent financing. To avoid losing permanent financing, therefore, the Limited Partner loaned the Partnership $1.67 million to pay off the construction loan and close the permanent loan.

In their summary judgment motion, Plaintiffs seek judgment in their favor on the following four counts and claims:[1]

---

[1] Plaintiffs represent that if they are granted summary judgment on their counts, they will seek a voluntary dismissal of the remaining counts in the Complaint. ECF No. 67 at 1 n.1.

On Count I, a claim for conversion, they seek judgment in favor of Plaintiff Three Rivers Landing of Gulfport, LP, and against Defendants Three Rivers Landing, LLC, Unlimited Construction, Inc., and Mark D. Kinser, jointly and severally, in the amount of $2,766,487;

On Count II, a claim for a breach of the Partnership Agreement, they seek judgment in favor of Plaintiff Three Rivers Landing of Gulfport, LP, and against Defendant Three Rivers Landing, LLC, in the amount of $1,880,043;

On Count IX, a claim for a breach of the Affiliate Guaranty, they seek judgment in favor of Plaintiff Apollo Tax Credit Fund-X3 Limited Partnership, and against all defendants except Horizon Management, Inc., jointly and severally, in the amount of $1,880,043; and

On Count X, a claim for Indemnity pursuant to the Partnership Agreement, they seek judgment in favor of Plaintiff Apollo Tax Credit Fund-X3 Limited Partnership, and against Defendant Three Rivers Landing, LLC, in the amount of $ 84,543.

They also seek an award of attorneys' fees and costs as to each count.

### B. The Parties and Related Entities

At the time the Complaint was filed, Plaintiff Appollo Tax Credit Fund-X3 Limited Partnership was the limited partner of the Partnership ("Limited Partner"). The General Partner at the time the Complaint was filed was RBC Three Rivers, LLC, who is not a party to this lawsuit. ECF No. 34, Answer ¶¶ 11, 13. Defendant Three Rivers Landing, LLC was the former general partner and manager of the Partnership ("Former General Partner") from the time the Partnership was formed until January 19, 2011, when it was replaced by RBC Three Rivers, LLC. Id. From August 15, 2007, and at all relevant times, Apollo Housing Manager II, Inc. was the special limited partner of Partnership ("Special Limited Partner").

Defendants' corporate structure and ownership are as follows:

3

- The Former General Partner is a limited liability company indirectly controlled by Kinser through Unlimited Construction ("Unlimited"), which owns 79% of the Former General Partner and is its sole managing member, Answer ¶¶ 4, 6-7;

- Defendant Unlimited Construction ("Unlimited") served as the general construction contractor for the Apartment Complex, and Kinser is the CEO and 100% stockholder of Unlimited. Answer ¶¶ 6-7.

- Defendant HG Developer, Inc. ("the Developer") served as the Developer of the Apartment Complex. Kinser was the CEO and 100% stockholder of the Developer. Answer ¶¶ 5, 7;

- Defendant Horizon Management Inc. ("Horizon") served as the property manager for the Apartment Complex, until it was replaced in November 2010. Kinser is the 100% stockholder of Horizon. Answer ¶ 8.

C.   **Specific Factual Allegations**

Plaintiffs in this case have set forth a detailed and lengthy statement of undisputed facts, which they have supported with documentary evidence, deposition excerpts, various declarations, and an expert report from an individual who has examined relevant bank account statements and other financial documents and has opined as to what funds were taken, when they were taken, and where they were sent. See ECF No. 71 at 4-18. Rather than offering any specific counter-statement of facts or contesting the validity of any of the specific facts offered, Defendants rely on four broad factual themes that they contend create disputes of fact. Those four themes and their legal significance are discussed below.

Bearing in mind that the trial date in this case is quickly approaching, the Court concludes that neither the parties nor any reviewing court will be aided by the Court restating the

facts as presented by Plaintiffs in great detail. Accordingly, except to the extent discussed otherwise in this Opinion, the Court incorporates by reference the statement of facts set forth by Plaintiffs, ECF No. 71 at 4-18, and assumes the reader's familiarity with those facts. As it must, the Court construes all reasonable inferences to be drawn from those facts in favor of Defendants, but concludes, as discussed below, that Plaintiffs are entitled to judgment as to liability.

## II. DISCUSSION

### A. Legal Standards

Summary judgment is proper where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when a rational trier of fact, considering the evidence in the record as a whole, could find in favor of the non-moving party. Ricci v. DeStefano, 557 U.S. 557, 586 (2009). "Summary judgment is appropriate only if taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, 'no material facts are disputed and the moving party is entitled to judgment as a matter of law.'" Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc) (quoting Ausherman v. Bank of Am. Corp., 352 F.3d 896, 899 (4th Cir. 2003)). Put differently, summary judgment should be entered if the Court finds, after a review of the record as a whole, that no reasonable fact-finder could return a verdict for the non-moving party. See Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 958-59 (4th Cir. 1996).

### B. Choice of Law

At the outset, the Court notes that the proper law to be applied to the claims at issue is not entirely clear. Three of the four claims at issue are based on written agreements. Counts II and X

are premised on the Partnership Agreement (technically titled the Second Amended and Restated Agreement of Limited Partnership, dated January 29, 2008), which specifically states that it "shall be construed and enforced in accordance with the laws of the State of Formation," and the "State of Formation" is defined in the Agreement as the State of Mississippi. ECF No. 68 at 171, Agreement at 98, Section 16.02; id. at 93, Agreement at 20 (defining "State of Formation"). A number of the exhibits to the Partnership Agreement, moreover, including the Affiliate Guaranty on which Count IX is based, expressly state that Mississippi law governs the application and interpretation of those agreements. ECF No. 68 at 201 (Affiliate Guaranty at D-7, ¶ 20); see also, e.g., id. at 184 (Development Agreement at A-8, Section 6, stating Mississippi law applies); id. at 193 (Incentive Management Fee Agreement at B-4, ¶ 10, stating Mississippi law applies).

In their briefing on the prior motion to dismiss, all parties appeared to agree that Virginia law applied to the claims at issue here. See, e.g., ECF Nos. 17, 18. Similarly, in their motion for summary judgment, Plaintiffs cite repeatedly to Virginia law in support of their claims, although they also refer to Mississippi law. See ECF NO. 67. In their opposition, Defendants do not dispute the applicability of Virginia law as to any of the four claims at issue, nor do they point to any difference between Virginia law and Mississippi law that would make a difference as to the proper resolution of the summary judgment motion. Accordingly, the Court will apply Virginia law herein, but notes that the same result would obtain under Mississippi law.[2]

---

[2] Under Virginia choice of law principles, applicable here pursuant to Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941), tort claims, such as the conversion count, are "analyzed under the law of the place of the wrong." Waterside Capital Corp. v. Hales, Bradford & Allen, LLP, No. 2:05CV727, 2007 WL 2254661, at *4-5 (E.D. Va. Aug. 3, 2007) (citing Jones v. R.S. Jones & Assoc., Inc., 431 S.E.2d 33, 34 (Va. 1993)), aff'd, 319 F. App'x 263 (4th Cir. 2009). "The place of the wrong is defined as the place where the last event necessary to make an actor liable for an alleged tort takes place, even if the actor has no control over the location of the last event." Waterside, 2007 WL 2254661, at *4-5 (citing Quillen v. Int'l Playtex, Inc., 789 F.2d 1041, 1044 (4th Cir. 1986)). No party has identified where the last event necessary to make defendants liable for conversion occurred. In any event, as with the

### C. Analysis Applicable to All Claims

The only cases Defendants cite in their written opposition brief are cases discussing the standards governing summary judgment motions. They do not cite a single case in the remainder of the opposition and thus apparently do not contest the legal standards set forth by Plaintiffs as to the specific claims on which Plaintiffs seek summary judgment. Accordingly, the Court finds those standards to be undisputed and applicable.

Defendants' opposition argues that a grant of summary judgment in Plaintiffs' favor would be "inappropriate," ECF No. 75 at 2, and that it would represent a "patent unjust enrichment" of Plaintiffs, id. at 11. Defendants expressly note that Kinser is not disputing that he (or entities he controls) received the funds in question. ECF No. 75 at 2. Instead, they contest the "material facts preceding the withdrawal of the [f]unds," id., and argue that there are certain contested facts regarding these preceding events that preclude summary judgment. Specifically, they identify four overarching factual disputes.

First, they claim that there were "unforeseen failures in the lending market [that] detrimentally affected every aspect of the Three Rivers project." ECF No. 75 at 3-6. Second, they argue that Plaintiffs worked against the best interests of the project instead of with Mr. Kinser. Id. at 6-7. Third, they contend that Defendants detrimentally relied upon oral agreements made with Plaintiffs outside the four corners of the various written agreements. Id. at 7-8. Fourth, and related to their third point, they posit that Melanie Menacore, a representative for RBC, authorized the payment of the "developer fees" to Defendants. Id. at 8-11.

Although the opposition brief does not tie in any of these alleged disputes of fact to any particular claim, element of any claim, or legal theory or defense, Defendants argue that these

---

contract claims and as discussed herein, Virginia and Mississippi law concerning conversion appear to be substantially identical.

facts nonetheless preclude summary judgment. The Court addresses each in turn, before addressing the specific claims on which summary judgment is sought.

As to the first two of these alleged disputes, even accepting the facts as alleged by Defendants to be true, it does not alter the respective obligations of the parties under their written Agreements, nor does it create a dispute of material fact as to the four claims at issue. In short, the fact that the Agreements at issue and the actions taken occurred in a volatile and uncertain market, and that the primary entity responsible for funding the Project, Wachovia, was "imploding," does not invalidate or change the legal significance of the written contracts, or their binding nature. Likewise, it provides no defense to conversion. Likewise, the fact that there may have been a more adversarial relationship between the parties, as opposed to a cooperative relationship, does not alter the parties' contractual obligations. Defendants offer no authority to the contrary.[3]

The third and fourth alleged factual disputes are essentially claims that the parties orally modified their written agreement. The problem with this theory, even if true, is that the oral modifications are not valid or enforceable if the original contract here was required to be in writing, which it was. See Va. Code Ann. § 11-2 (requiring that any contract for services that cannot be performed in less than a year must be in writing); Lindsay v. McEnearney Assocs., Inc., 531 S.E.2d 573, 576 (Va. 2000) (stating that where an underlying contract is governed by

---

[3] The Court does not interpret this argument by Defendants as one that changed circumstances so affected the project as to make performance impossible. See, e.g., Opera Co. of Boston, Inc. v. Wolf Trap Foundation for the Performing Arts, 817 F.2d 1094, 1102 (4th Cir. 1987) (discussing the elements of the defense of impracticability); see also Elderberry of Weber City, LLC v. Living Ctrs.-Southeast, Inc., __ F. Supp. 2d __, 2013 WL 3830501 (W.D. Va. July 24, 2013) (discussing same and noting that "performance may be impracticable because extreme and unreasonable difficulty, expense, injury, or loss to one of the parties will be involved[]" [b]ut a 'mere change in the degree of difficulty or expense' does not amount to impracticability'") (citations omitted). Here, in fact, Kinser testified that despite all of the market difficulties, the project was completed "on time and on budget." Kinser Dep. at 70. Thus, the Court does not construe Defendants' argument to be one of impracticability.

the Statute of Frauds, any modification of the contract must likewise be in writing and signed by the party to be charged or his agent). The same is true under Mississippi law, as well. See Miss. Code Ann. § 15-3-1(d) (statute of frauds applies to any agreement that cannot be performed in less than fifteen months); Canizaro v. Mobile Commc'ns Corp. of Am., 655 So. 2d 25, 29-30 (Miss. 1995) (any modification of a contract within the statute of frauds would also have to be in writing); but cf. id. (stating that a *waiver* of the contract, as opposed to a modification, is permitted without a writing).

As applied here, then, even if there are disputes of fact as to whether the parties orally modified their written agreements, and even if a fact-finder could find that there was such an oral modification of the agreement, it would not be enforceable or binding. Rather, just as in Land & Marine Remediation, Inc. v. BASF Corp., 2012 WL 2415552, *4-5 (E.D. Va. 2012), "[a]bsent the existence of any enforceable modifications to the [original Agreements], the undisputed facts establish that [LMR] failed to comply with its contractual obligations . . . ." In short, even if the fact-finder credited Kinser's claims that the written agreements were modified orally, those oral modifications are not legally binding. Thus, they do not provide a grounds for denying summary judgment.

Similarly, those allegations do not provide a defense to the conversion count, despite counsel's arguments to the contrary at the hearing. Specifically, Defendants' counsel argued at the hearing that Kinser's good-faith belief that he had authority from Menacore or others to take the funds constitutes sufficient "mitigation" to send the conversion claim to trial. While it may explain why Kinser did what he did, it does not undercut the conversion claim because a defendant's belief that he had a right to the property is no defense to conversion. That is, "one may be held liable in conversion even though he reasonably supposed that he had a legal right to

9

the property in question." Morissette v. United States, 342 U.S. 246, 270 n.31 (1952). In Morissette, the Supreme Court explained the rationale for this rule:

> [In the tort of conversion,] the defendant's knowledge, intent, motive, mistake, and good faith are generally irrelevant. If one takes property which turns out to belong to another, his innocent intent will not shield him from making restitution or indemnity, for his well-meaning may not be allowed to deprive another of his own.

Id. at 270; see also Gordon v. Pete's Auto Serv. of Denbigh, 838 F. Supp. 2d 436, 440-41 (E.D. Va. 2012) (applying Virginia law and citing same principle).

For all of these reasons, none of the four "disputes of fact" identified by Defendants preclude summary judgment as to liability for Plaintiffs.

    **D.**    **Specific Claims**

        **1.**    **Count I – Conversion**

The tort of conversion "encompasses any wrongful exercise or assumption of authority . . . over another's goods, depriving him of their possession; [and] any act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it." PGI, Inc. v. Rathe Prods., Inc., 576 S.E.2d 438, 443 (Va. 2003) (citations and internal quotation marks omitted). This court has interpreted the tort as requiring both (i) the ownership or right to possession of the property at the time of the conversion and (ii) the wrongful exercise of dominion or control by defendant over the plaintiff's property, thus depriving plaintiff of possession." Williams v. Reynolds, 2006 WL 3198968, at *3 (W.D. Va. Oct. 31, 2006); see also Community Bank v. Courtney, 884 So.2d 767, 772 (Miss. 2004) (setting forth similar elements required under Mississippi law).

Here, the undisputed and specific facts relied on by Plaintiffs in their supporting memorandum, including the Lioy Report (an expert report unchallenged by Defendants) and

10

Kinser's own testimony, establish that at least $2.7 million in Partnership funds were converted by the Former General Partner and improperly paid to Unlimited and other third parties involved in other unrelated projects of Kinser's. See, ECF 72, Lioy Report at ¶ 15; see also ECF No. 75 at 1-2 (Defendants' opposition conceding that Mr. Kinser received the funds).

The Court also agrees with Plaintiffs that, although Kinser could not be held individually liable simply by virtue of his position with the corporation, where a corporate officer or member directs, authorizes, or actively participates in the commission of the tort, the officer or member can be held personally liable. ECF No. 67 at 20 (citing Sky Cable, LLC v. Coley, 2013 WL 3517337, at *20 (W.D. Va. 2013) and McFarland v. Va. Ret. Servs. of Chesterfield, LLC, 447 F. Supp. 2d 727, 739-40 (E.D. Va. 2007)); see also Turner v. Wilson, 620 So.2d 545, 548-49 (Miss. 1993) (under Mississippi law, "when a corporate officer directly participates in or authorizes the commission of a tort, even on behalf of the corporation, he may be held personally liable."). Here, the undisputed facts establish that it was Kinser who directed that the funds at issue be transferred, specified the amounts of the transfer, and specified the destination of the transferred funds. See ECF No. 67 at 20-21 (SJ Mem. citing to various portions of deposition testimony of Kinser, Joyce and Defs.' Resp. to Pls.' Interrogs).

Additionally, to the extent Defendants are arguing that the fees were fees that the Developed had earned, even if they were not yet payable under the Agreement,[4] that argument does not preclude liability for conversion or breach of contract, although it may affect the amount or damages. This is so for a number of reasons. First, at least some portion of the monies paid—$654,297—was above and beyond the total amount of the development fee to be paid under the Agreement. Some monies, then, were clearly converted. Second, as explained in the

---

[4] Mr. Kinser repeatedly testified in his deposition that, according to Ms. Menacore, the funds taken out from the December 2009 capital contribution were "earned monies" and that the developer was entitled to spend them as he saw fit.

11

Lioy Report, many of the funds were not paid to the Developer, but were instead sent to the accounts of other entities, most of which were unrelated to the Three Rivers Landing project. This also shows that the monies were not being treated as a Developer fee.

Significantly, moreover, under the plain language of the Agreement, Defendants were not yet entitled to either the $1.7 (which might have been paid at a later date), or the $654,297 that was above and beyond the total amount specified in the contract.[5] ECF No. 67 at 10 and sources cited therein. Thus, even if the Developer might have been entitled to a portion of the monies at some later date, it was not yet entitled to the money at the time of the transfers; consequently, that portion was not yet the Developer's money. Therefore, the elements of Plaintiffs' conversion claim, have been established insofar as liability is concerned.

## 2. Count II – Breach of the Partnership Agreement

Under Virginia law, "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." Filak v. George, 594 S.E.2d 610, 614 (Va. 2004); see also Guinn v. Wilkerson, 963 So.2d 555, 558 (Miss. Ct. App. 2007) (same elements under Mississippi law); cf. Business Comm, Inc. v. Banks, 90 So.3d 1221, 1225 (Miss. 2012) (clarifying that monetary damages are not required to be shown as an element of the claim in Mississippi).

The Partnership Agreement obligated the Former General Partner to pay all Excess Development Costs, including any funds necessary to close permanent financing. See ECF No. 68 at 68, Ex. 12 to Kinser Dep. § 8.10(a)(ii). Kinser admitted in his deposition that this was the

---

[5] The Court further notes that Plaintiffs state that they believe the Developer was actually entitled to only $400,000 in developer fees, but for purposes of this motion only, assume that the Developer was entitled to the maximum amount of developer fees of $677,660. ECF No. 67 at 20 n.10; see also ECF No. 72, Lioy Report (calculating amounts and assuming developer fee owed as of December 31, 2010 was $677,660). Even if that amount was due, the total amount withdrawn was well above that amount.

Former General Partner's obligation and that it failed to meet that obligation. Kinser Dep. 64-66, 85. Plaintiffs also have provided evidence showing that that the Partnership was forced to seek a loan from the Limited Partner in the amount of $1,671,329.19 and also incurred costs totaling more than $208,000 to remediate defects in construction and achieve Final Closing. Defendants do not point to any specific facts that dispute these allegations. According to Plaintiffs, these amounts total $1,880,043.96 and represent the Partnership's damages as a result of the breach.

Other than setting forth the four alleged justifications discussed above as background for their actions, Defendants do not contest that a breach occurred. Accordingly, the Court concludes that summary judgment on this Count should be granted as to liability.

### 3. Count IX – Breach of the Affiliate Guaranty

Under the Affiliate Guaranty, for the benefit of the Limited Partner, the Guarantors (including Kinser personally) guaranteed the obligations of the Former General Partner to the Partnership. This included the obligation to pay the Excess Development Costs and all other payment obligations, such as those that may arise from the Construction Completion Guaranty. ECF No. 68 at 195, Ex. 14 to Kinser Dep. ¶ 1. Despite demand, neither the Developer nor the Guarantors contributed any funds toward closing permanent financing in breach of their obligations under the Affiliate Guaranty. Plaintiffs allege the Limited Partner was damaged in the amount of $1,671,329.19, on account of its loan to the Partnership.

Again, other than the broader factual disputes discussed above, Defendants do not point to any specific evidence to dispute the allegations that support this claim as to liability. Summary judgment on this Count should be granted as to liability.

### 4. Count X – Indemnity

The claim for indemnity is fully supported by the facts set forth at pages 16 through 18 of Plaintiffs' supporting memorandum, ECF No. 67 at 16-18, and Defendants do not respond at all or point to any facts to dispute the allegations supporting the indemnity claim. Accordingly, the Court concludes that summary judgment is appropriate in favor of the Limited Partner, and against the Former General Partner. It thus appears that the amount of damages sought here, in the amount of $84,543, is undisputed, but the Court will also allow testimony at trial on this claim to ascertain the proper amount of damages.

E. **Damages**

Although the Court has concluded that Plaintiffs are entitled to summary judgment as to liability, it concludes, based on the present record, that Defendants have raised a sufficient dispute of fact as to the damages that Plaintiffs have suffered, at least as to the conversion claim. Defendants contend that allowing the full measure of damages sought here would constitute an unjust enrichment and point to Mr. Kinser's testimony, especially regarding the Developer fee, for support. That is, it appears that Kinser's testimony is that some portion of the monies converted were a Developer fee that had been earned. While it is undisputed that the earned fee was not yet payable under the terms of the contract, the Developer may have been entitled to those funds in the future.

As Plaintiffs explain, the total development fee to be paid was $3,789,621, but "$1,655,861 of the developer fee was anticipated to be deferred after closing of the permanent financing (and the funding of the final and Seventh Capital Contribution) and paid out of the net cash flow of the Partnership." ECF No. 67 at 10 n.5; ECF No. 68 at 143, Partnership Agreement at Section 8.11. The amount of damages sought by Plaintiffs include the $1,655,861 that was to be deferred. Thus, Plaintiffs ask for an amount of damages that would compensate them for

monies that, although they were taken prematurely and perhaps given to improper entities, the Developer might in fact already have earned, although they were not yet payable. In short, the Court concludes that there is at least a dispute of fact as to whether Plaintiffs are entitled to the full measure of damages they seek, which includes the $1,655,861, or whether Plaintiffs would be unjustly enriched by a judgment that includes that amount.

Additionally, while summary judgment on the contract counts (and particularly Count X) may be unaffected by the issue of the "earned-but-not-yet-payable Developer fee," the Court believes it advisable to address all the damages at a single trial.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment, ECF No. 66, is **GRANTED** as to liability and **DENIED** as to damages. An appropriate order shall issue this day.

ENTER: This 2nd day of October, 2013.

James C. Turk
Senior United States District Judge