CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 21 2014

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| THREE RIVERS LANDING OF GULFPORT, LP, and APOLLO TAX CREDIT FUND–X3 LIMITED PARTNERSHIP, | Case No. 7:11-cv-00025 |
| Plaintiffs, | |
| v. | MEMORANDUM OPINION |
| THREE RIVERS LANDING, LLC, HG DEVELOPER, INC., UNLIMITED CONSTRUCTION, INC., MARK D. KINSER, and HORIZON MANAGEMENT INC., | By: Hon. James C. Turk Senior United States District Judge |
| Defendants. | |

This matter is currently before the Court on Plaintiff Apollo Tax Credit Fund–X3 Limited Partnership's ("the Limited Partner") application for award of attorneys' fees pursuant to Fed. R. Civ. P. 54(d). ECF No. 94. In its application, the Limited Partner seeks $551,128.75 in fees, costs of $550 and expenses of $11,701.07, which include the fees and expenses of Grant Thornton, the firm retained to provide expert testimony in this matter. ECF No. 95 at 2. Defendants oppose the motion, arguing in general terms that the amount of fees sought is an excessive amount in light of the limited discovery in the case, and "excessive on its face" in light of the judgment in this case. See ECF No. 97. Defendants do not offer any specific objections to any aspect of the application. Plaintiffs have filed a reply, ECF No. 99, which the Court has also considered. The parties have informed the Court that they do not want a hearing on the motion and it is now ripe for disposition.

The Court has considered the filings of the parties and also has an independent obligation to ensure that any amount of fees or expenses awarded is reasonable. For the reasons set forth below, the Court will award fees, costs, and expenses, but reduces the attorneys' fee award to $316,340.08.

I.      **Background and Basis for Award of Fees**[1]

This Court awarded summary judgment in Plaintiffs' favor as to certain counts in the Complaint on liability only, and held a one-day bench trial on the issue of damages. In the Trial Opinion entered after the trial, the Court concluded that the "Limited Partner [i.e., Apollo Tax Credit Fund–X3 Limited Partnership] is entitled to an award of reasonable attorneys' fees, costs, and expenses in connection with enforcing the Affiliate Guaranty." ECF No. 91 at 24, 31. The entitlement to fees in this case, therefore, arises from the Affiliate Guaranty, which was executed by Defendants HG Developer, Inc., Unlimited Construction, Inc., and Mark D. Kinser on January 29, 2008. That document provides that the Limited Partner is entitled to "prompt and complete payment of all costs and expenses (including, without limitation, reasonable attorneys' fees) incurred by [the Limited Partner] in collection of the enforcement of this Guaranty Agreement against the Guarantor[s]." Affiliate Guaranty at § 1; see ECF No. 91 at 24.

---

[1] Additional background concerning the case and the counts involved may be found in the Court's Trial Opinion. See ECF No. 91. The Court does not repeat that detailed background here, but provides the following summary. First, on Counts I and II (conversion and breach of contract, respectively), the Court entered judgment in favor of the Partnership (Plaintiff Three Rivers Landing of Gulfport, LP), in the amounts of approximately $3 million and $1.9 million, respectively, the defendants being entitled on each count to a dollar for dollar reduction for any amounts paid or collected under the other court. On Count IX, a claim for breach of the Affiliate Guaranty, the Court entered judgment in favor of the fee applicant here, the Limited Partner, for the same $1.9 million amount, again entitling defendants to a reduction for amounts paid or collected under Counts I or II. On Count X, a claim for Indemnity pursuant to the Partnership Agreement, the Court entered judgment in favor of the Limited Partner for approximately $85,000, which was not subject to reduction.

2

## II. Applicable Standards

Federal Rule of Civil Procedure 54(d)(1) provides that, absent a statute, rule, or order to the contrary, costs other than attorney's fees "should be allowed to the prevailing party." Additionally, where a contract provides for the award of fees, they should be awarded in accordance with that contract's terms, but the amount of the award must still be reasonable. See W. Insulation, LP v. Moore, 362 F. App'x 375, 379-80 (4th Cir. 2010) (unpublished) ("Even if awarding fees is mandated by a contractual provision, the amount awarded must still be reasonable.") (citation omitted); see In re Abrams & Abrams, P.A., 605 F.3d 238, 243-44 (4th Cir. 2010); see also Affiliate Guaranty § 1 (referencing "reasonable attorneys' fees"). The amount of any fee award lies within the judicial discretion of the trial judge, who has "close and intimate knowledge of the efforts expended and the value of services rendered . . . ." Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir.), cert. denied, 439 U.S. 934 (1978).

To determine a reasonable fee award, a district court must arrive at the appropriate lodestar figure. This figure is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Grissom v. The Mills Corp., 549 F.3d 313, 320-21 (4th Cir. 2008). In cases where the underlying claims are governed by state law, Judge Jones of this Court has held that the "reasonableness" of both the hours and the rate is determined by applying state law. See Double K Props., LLC v. Aaron Rents, Inc., 2003 WL 22697218, at *3 (W.D. Va. Nov. 14, 2003); see also Gregory v. Chem. Waste Mgmt., Inc., 38 F. Supp. 2d 598, 626 (W.D. Tenn. 1996) (same and collecting authority stating same). In other contexts, federal courts within the Fourth Circuit determine reasonableness by referring to the factors originally set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), and adopted by the Fourth Circuit in Barber, 577

3

F.2d at 226.[2] As recently explained by the Fourth Circuit, attorney's fee awards are reviewed primarily by use of the lodestar method, with "substantial reliance" on the Johnson factors.

Plaintiff here argues for the application of the Johnson factors, and Defendants do not object nor do they argue that state law should apply. Accordingly, the Court looks to the Johnson factors for guidance, but notes that they are nearly identical to the factors considered under Virginia law.[3] Thus, even if the Court applied the Virginia factors, the result here would be the same. See, e.g., W. Insulation, LP v. Moore, 362 F. App'x 375, 380 (4th Cir. 2010) (referencing both the Virginia factors and the Johnson factors in affirming the award of attorneys' fees).

The twelve Johnson factors are:

> (1) the time and labor required in the case, (2) the novelty and difficulty of the questions presented, (3) the skill required to perform the necessary legal services, (4) the preclusion of employment by the lawyer due to the acceptance of the case, (5) the customary fee for similar work, (6) the contingency of a fee, (7) the time pressures of the case; (8) the award involved and the results obtained, (9) the experience, reputation, and ability of the lawyer[s]; (10) the "undesirability" of the case, (11) the nature and length of the professional relationship between the lawyer and the client, and (12) the fee awards made in similar cases."

In re Abrams & Abrams, P.A., 605 F.3d at 244.

---

[2] For purposes of this opinion, the Court need not engage in a lengthy discussion of the differences between the Johnson factors and the lodestar approach, contrasted in Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542 (2010), nor whether specific Johnson factors, if already merged into the lodestar calculation, can be otherwise considered to adjust the lodestar amount. McAfee v. Boczar, 738 F.3d 81, 89 (4th Cir. 2013). Instead, the Court simply notes the Fourth Circuit has recently reaffirmed that "[t]o ascertain what is reasonable in terms of hours expended and the rate charged [i.e., to determine an appropriate lodestar figure], the court is bound to apply the [Johnson factors]." Id. at 88.

[3] See, e.g., Chawla v. BurgerBusters, Inc., 499 S.E.2d 829, 833 (Va. 1998) (in determining reasonableness of fee, factfinder "may consider, inter alia, the time and effort expended by the attorney, the nature of the services rendered, the complexity of the services, the value of the services to the client, the results obtained, whether the fees incurred were consistent with those generally charged for similar services, and whether the services were necessary and appropriate") (citing Seyfarth, Shaw v. Lake Fairfax Seven Ltd. Partnership, 480 S.E.2d 471, 473 (Va. 1997)).

## III. Reasonableness of Amounts Sought

Focusing on the most pertinent Johnson factors here, the Court finds that there was significant time and labor required and expended by Plaintiffs' counsel in the case. The time expended by the attorneys (and falling within the scope of "enforcing" the Affiliate Guaranty) includes time spent before the lawsuit was even instituted advising the Limited Partner "in the investigation of the missing funds, protecting the project from loss of the tax credits, identifying options for and . . . documenting the closing [of] the Partnership's permanent loan, and . . . enforcing its rights against" the Defendants, including the Guarantors. ECF No. 96, Decl. of T. Brown at ¶ 7. After instituting suit, Plaintiffs' counsel responded to a thoroughly-briefed motion to dismiss, briefed a lengthy motion for summary judgment with numerous exhibits, and tried a day-long bench trial on damages, which were vigorously contested by Defendants. Additionally, Plaintiffs' post-trial proposed findings of fact and conclusions of law required significant work to prepare and they were adopted by the Court in large part. Discovery in this case was hampered by difficulty in obtaining documents from Defendants at one point, which necessitated the filing of a motion to compel that was granted by the Court. On the other hand, there were not extensive depositions taken, so the Court finds the discovery overall to be average or less onerous than in similar types of cases. The legal questions in the case were not particularly difficult, as they were basic breach of contract claims and a conversion claim. The factual background involved in the transaction, however, was more complicated than an average breach of contract case, as it involved a nearly $30 million construction project designed to generate low-income housing tax credits and implicated a number of different agreements governing the various parties' responsibilities. As to the eighth factor, counsel achieved an excellent result for the Limited Partner. Similarly, as to the ninth factor, the ability of Plaintiffs' counsel and the quality of their

5

legal work before the Court in this case was of a very high caliber, and the fact that the Court is reducing the award is in no way related to the performance of Plaintiffs' counsel.

In looking at the customary fee for similar work and the fee awards made in similar cases, however, the Court concludes that the reasonable rate in this case is lower than that sought, as discussed in detail below. Additionally, the Court reduces the award for the additional reason that the number of hours expended are not all attributable to enforcing the Affiliate Guaranty. These two, independent reasons for the reduction are discussed below.

### A. Reasonableness of Rates

Turning to the rate first, the Court concludes that the hourly rate sought is not entirely reasonable. The Limited Partner seeks an award for 1,428 hours of work by its attorneys and others at a blended hourly rate of $385.94 (calculated by totaling the amount of fees billed by various timekeepers (after minimal voluntary reductions)—$551,128.75—by the total number of hours expended—1,428 hours). This calculation takes into account both the $685 hourly rate of lead counsel, Tyler Brown, and the $275 hourly rate of Mr. Brown's associate, Justin Paget, who were the primary attorneys on the case.[4] It also includes time billed by other partners, associates, and non-attorney professionals at the firm, including some other partners billing hours at an hourly rate of $685. See generally ECF No. 96, Decl. of Tyler P. Brown and exhibits thereto.

Notably, the fee applicant bears the burden of establishing that the rates sought are reasonable, which requires a showing that the requested rates are "consistent with the prevailing market rates in the relevant community for the type of work for which [s]he seeks an award.". McAfee v. Boczar, 738 F.3d 81, 91 (4th Cir. 2013) (citations omitted). Here, the Court has only

---

[4] Messrs. Brown and Paget are both employed by the law firm of Hunton & Williams. As set forth in his affidavit, Mr. Brown has been a member of the Virginia State Bar since 1987. The firm's website indicates that Mr. Paget graduated from law school in 2008. See www.hunton.com/Justin_Paget/ (last visited March 12, 2014).

the affidavit of Mr. Brown that these are the rates (or lower than the rates) his firm typically charges clients, and that the rates were actually charged in this case. See ECF No. 96, Brown Decl. at ¶¶ 6, 11-12. The Limited Partner has not provided, however, any affidavits of local lawyers or other experts who are familiar with the type of work in the relevant community or the prevailing rates. See McAfee, 738 F.3d at 91 (noting that generally such evidence has been deemed competent to show the reasonableness of such rates); see also Seyfarth, Shaw, 480 S.E.2d at 473 (in Virginia, expert testimony "ordinarily" is required to assist the factfinder as to the reasonableness of the hourly rates charged, but where the fee applicant has included affidavits of counsel and detailed time records, expert testimony may not be required).

In the absence of any supporting information other than Mr. Brown's Declaration and the detailed bills, the Court has to determine whether the evidence before the Court establishes that the rates charged are consistent with the prevailing market rates. As to the rates charged by Mr. Paget, other associates, and other professionals other than the partner attorneys at Hunton & Williams, the Court finds that their rates are reasonable in this case. The $685 hourly rate for Mr. Brown and other partners, however, is an unreasonably high rate for the Roanoke Valley and the Western District of Virginia, even if it may be a reasonable rate for the Richmond area where counsel is based. Cf. Grissom v. The Mills Corp., 549 F.3d 313, 321-22 (4th Cir. 2008) (rejecting use of rates for Washington, D.C. where court and counsel were located in the suburb of Reston, Virginia and nothing that "the community in which the court sits is the first place to look to in evaluating the prevailing market rate.") (citation omitted); cf. also McAfee, 738 F.3d at 91 (noting that the rate might seem exorbitant to many, but giving deference to the district court's determination that experienced lead counsel's $585 hourly rate for a civil rights case arising in the Eastern District of Virginia was reasonable).

In reaching this conclusion, the Court bases its conclusion on forty years' experience as a judge in the Western District of Virginia, as well as its independent knowledge of the fees generally charged by attorneys in this District and the Roanoke division, in particular. Additionally, several recent cases from this district have found much lower rates to be reasonable rates for experienced lead counsel. See, e.g., Hudson v. Pittsylvania Cnty., No. 4:11-cv-43, ECF No. 92, Report and Recommendation regarding attorneys' fees (August 2, 2013), adopted by ECF No. 95, Order Awarding Attorneys' Fees (Aug. 26, 2013) (concluding a $400 hourly rate in Danville, Virginia case was unreasonable and reducing to $350, even though attorney charged $400 rate in Richmond); Chadwell v. Lee Cnty. Sch. Bd., 535 F. Supp. 2d 586, 603 (W.D. Va. 2008) (reducing hourly rate from $350 to $250 for civil rights case in Big Stone Gap, Virginia and noting that although the attorney charged $350 for his legal services, the plaintiff had not met her burden of proving that was a prevailing market rate); Double K Props., LLC v. Aaron Rents, Inc., 2003 WL 22697218, at *4 (W.D. Va. Nov. 14, 2003) (reducing hourly rate of counsel in commercial lease dispute case in Abingdon, Virginia, from $550 to $210).

The Court recognizes that there are differences between the case at bar and the cases in the preceding paragraph. Hudson and Chadwell were civil rights cases and thus dissimilar from the instant case, which is a somewhat complicated contractual dispute. Likewise, Double K Properties was a basic commercial lease dispute and also decided over ten years ago, when rates were lower. Moreover, all three cited cases were in divisions of this court where rates charged are usually lower than rates charged by attorneys in the Roanoke division. For all of these reasons, the Court does not find that a reduction to a $210, $250, or $350 hourly rate is warranted. Nonetheless, the Court cannot find a $685 hourly rate to be reasonable for this case, and concludes that it is above the customary fee charged for similar work in a civil matter of this

nature in the Western District of Virginia by an attorney with Mr. Brown's experience. Instead, the Court reduces Mr. Brown's (and other partner) rates, capping them at a $500 hourly rate. This reduction to the partner rate results in a corresponding reduction of the blended hourly rate from $385.94 to $332.29.[5]

### B.  Reasonableness of Hours/Reduction for Time Spent on Claims Not Subject to Fee-Shifting Agreement

The second reason for reducing the award sought is the Court's conclusion that not all the time expended by counsel was expended in order to enforce Limited Partner's rights under the Affiliate Guaranty. Cf. McAfee, 738 F.3d at 88 (a fee award may not include fees "for hours spent on unsuccessful claims unrelated to successful ones"). This is important here because the Limited Partner's entitlement to fees derives solely from its contract. That is, the Affiliate Guaranty provides for the recovery of attorneys' fees incurred only by the Limited Partner in order to enforce the obligations of the Guaranty (which run only to the Limited Partner) against the three Guarantor Defendants. Although the parties and the Court have often referred collectively to the plaintiffs or to the defendants as a group, the Limited Partner was a plaintiff in only two of the four counts on which judgment was entered—Counts IX and X. Put differently, the enforcement of rights by the Limited Partner under the Affiliate Guaranty was the subject of only two of the four counts tried and resolved by the final judgment.[6]

---

[5] Although Plaintiff did not provide a summary of the hours billed at partner rates versus hours billed at other rates, the 200 pages of bills attached to the fee application allowed the Court to perform that calculation. Based on the Court's review of those records, it appears that approximately 29% of the total hours spent on this case were billed at the $685 rate. Thus, to calculate a new, reasonable blended rate, the Court has reduced the total amount sought by $76,612.20 (29% of the hours (or 414.12 hours) multiplied by $185 ($685 minus $500)). This results in a new figure for total fees sought of $474,516.55 ($551,128.75 minus $76,612.20) and a new blended hourly rate of $332.29 ($474,516.55 divided by 1428 hours).

[6] The Court is aware that the provision allowing for the recovery of attorneys' fees in the Affiliate Guaranty expressly includes enforcement of the guarantee of payment and performance by the

While the Court could simply cut the amount of hours in half, since only half of the counts are brought directly pursuant to the Affiliate Guaranty, the Court concludes that would be inappropriate for several reasons. First, because of the nature of the relationship between the plaintiffs (one being the Partnership and one being a Limited Partner), there was certainly significant overlap in effort expended on the four counts taken to judgment. Second, some large percentage of the work performed would have been necessary even if the only counts in the Complaint had been brought by the Limited Partner for enforcement of the Affiliate Guaranty. See Hensley, 461 U.S. at 439-40 (where claims are related and "involve a common core of facts . . . much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis."). In short, the Court concludes there was substantial overlap of efforts between the Affiliate Guaranty counts and the other counts.

At the same time, the entirety of counsel's time is not attributable to enforcement of the rights under the Affiliate Guaranty in favor of the Limited Partner. In particular, the conversion count (Count I) was heavily litigated and resulted in the highest damage award. Also, it was possibly the one most important to Plaintiffs as a practical matter, based on its likely non-dischargeability in bankruptcy. This count, however, was brought solely in the Partnership's name. Moreover, in opposing the motion to dismiss, Plaintiffs argued that the conversion count was unrelated to the contractual counts and would exist separately from them, since it arose from a separate common law duty Defendants owed to the Partnership. ECF No. 18 at 10-12. Thus, the Limited Partner cannot now claim that the conversion count, too, was encompassed within the scope of the Affiliate Guaranty. In short, the Limited Partner is not entitled to fees incurred

---

Partnership, for which the Guarantors were responsible. See Affiliate Guaranty at § 1. That fact, however, does not make the claims by the Partnership subject to the fee-shifting provision.

solely to prosecute the conversion count. Likewise, the Limited Partner may not recover fees utilized to prosecute the other claim solely in the name of the Partnership, Count II.

To ensure that the Limited Partner is not being compensated for work pursued outside the scope of the Affiliate Guaranty, therefore, the Court will discount the number of hours by one-third.[7] The Court concludes that only two-thirds of the fees reasonably can be attributed to the enforcement of the Affiliate Guaranty and will reduce the number of hours accordingly. See Fox v. Vice, 131 S. Ct. 2205, 2216 (2011) (the goal in determining fees "is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time).

Based on the Court's revisions to the amounts sought, the Court will award fees and costs as follows:

1. costs in the amount of $550;

2. expenses in the amount of $11,701.07; and

3. fees in the amount of $316,340.08 (blended hourly rate of $332.29 times 952 hours (two-thirds of 1428 hours)).

The total amount to be taxed is therefore $328,591.15.

## IV. Conclusion

For the foregoing reasons, Plaintiff Apollo Tax Credit Fund–X3 Limited Partnership's petition for attorneys' fees and expenses (ECF No. 94) is **GRANTED IN PART**. Costs, expenses, and fees in the amount of $328,591.15 are taxed against Defendants HG Developer,

---

[7] The Court will not discount the expenses or costs on this basis, since there would not have been a large reduction, if any, in those categories, even if only the Affiliate Guaranty counts were the only ones included in the Complaint. For example, the filing fee or summons fee would not have been any less to just file on the Affiliate Guaranty counts. Similarly, the expert fees likely would not have been less since the same expert offered testimony on all the counts. For a complete breakdown of the costs and expenses sought, see ECF No. 96, Ex. 1 at 1.

Inc., Unlimited Construction, Inc., and Mark D. Kinser, jointly and severally. A separate order will issue this day.

ENTER: This 18th day of April, 2014.

/s/ James C. Turk
James C. Turk
Senior United States District Judge